UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CLARENCE ALBERT SAFFOLD, III,

                    Plaintiff,

        v.                                    Case No. 22-cv-1467-pp

DR. RICHARD FULLER, DR. PRAPTI KUBER,
EDWARD NEISNER and DR. JUSTIN S. RIBAULT,

                    Defendants.

**ORDER GRANTING IN PART AND RESERVING RULING IN PART ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION
GROUNDS (DKT. NO. 21) PENDING AN EVIDENTIARY HEARING**

        Plaintiff Clarence Albert Saffold, III, who is incarcerated at the Milwaukee

Secure Detention Facility and is representing himself, is proceeding under 42

U.S.C. §1983 on federal and state law claims against officials at Dodge

Correctional Institution and Racine Correctional Institution. The defendants

move for partial summary judgment on the ground that the plaintiff failed to

exhaust his administrative remedies before bringing his complaint. Dkt. No. 21.

The plaintiff opposes the motion. Dkt. No. 28. The motion has been fully briefed

for some time; the court will grant the defendants' motion in part and reserve

ruling in part pending an evidentiary hearing.

**I.    Facts**

    A.    Procedural Background

The complaint alleges that from September 3, 2019 through April 8,

2022, officials at Dodge and Racine Correctional Institutions failed to provide

adequate medical care for the plaintiff's medical needs, failed to provide appropriate medical restrictions or failed to abide by the plaintiff's medical restrictions despite being aware of a hazardous environment. Dkt. No. 1. The court allowed the plaintiff to proceed against Dr. Richard Fuller at Dodge and against Drs. Prapti Kuber and Justin Ribault and physical therapist Edward Neisner at Racine on claims under the Eighth Amendment and under state law for negligence and medical malpractice. Dkt. No. 10 at 35.

On August 9, 2023, the court issued a scheduling order setting an October 10, 2023 deadline for the defendants to file a motion for summary judgment on the grounds that the plaintiff failed to exhaust his administrative remedies before bringing this lawsuit. Dkt. No. 14. The court granted the defendants' motion to extend that deadline by three days. Dkt. No. 20. On October 12, 2023, the defendants filed their motion for partial summary judgment on exhaustion grounds. Dkt. No. 21. The next day, the court ordered the plaintiff to respond to the motion by the end of the day on November 13, 2023. Dkt. No. 26. The plaintiff timely filed his response and supporting materials. Dkt. Nos. 28–30.

On January 29, 2024, the defendants asked the court to stay the parties' February 7, 2024 deadline to file dispositive motions on the merits pending the court's decision on their motion for summary judgment on exhaustion grounds. Dkt. No. 33. The court granted that motion. Dkt. No. 34.

B.   Factual Background

The court considers the parties' proposed facts "only to the extent they are clearly and obviously supported by citations to the . . . record." Jenkins v. Syed, 781 F. App'x 543, 545 (7th Cir. 2019) (internal quotation marks omitted). The court will deem admitted any facts that the non-moving party does not properly contest. See Civil Local Rule 56(b)(4) (E.D. Wis.); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

The court allowed the plaintiff to proceed on claims that:

- in November 2019, while the plaintiff was incarcerated at Dodge, Dr. Fuller declined to provide him a lower bunk restriction and declined to alter his medications even after the plaintiff told him that they were not helping, dkt. no. 10 at 9–11, 24–25;

- from May 2020 through at least June 2021, Dr. Kuber failed to provide the plaintiff a lower bunk restriction, took his walking cane and did not give him alternative treatment for his pain, id. at 27–28;

- from July 2021 through early 2022, Dr. Ribault provided inadequate treatment for the plaintiff's medical issues and resulting pain, id. at 28; and

- in 2021 and 2022, physical therapist Neisner refused to treat the plaintiff despite doctors' referrals for physical therapy, id. at 34.[1]

  1. *The Plaintiff's Institutional Complaints*

The defendants attached the plaintiff's Inmate Complaint History Report, which lists all his complaints processed through the Inmate Complaint Review System (ICRS) as of July 10, 2023 (seven months *after* the plaintiff filed his complaint). Dkt. No. 24-1. They also provided a declaration from Emily Davidson, who is a Corrections Complaint Examiner at the Department of Correction's (DOC) Central Office in Madison, Wisconsin. Dkt. No. 24 at ¶2. Davidson avers that she "diligently searched and examined the ICTS [Inmate Complaint Tracking System] for records related to inmate complaint and appeals filed by [the plaintiff] that are relevant to the claims in this case." Id. at ¶14. She identified five institutional complaints and appeals "that might relate to [the plaintiff's] claims in this lawsuit." Id. at ¶15; Dkt. Nos. 24-2 through 24-6.

  a. DCI-2019-19496 (Dr. Fuller)

The plaintiff signed this complaint on November 10, 2019. Dkt. No. 24-2 at 6. He summarized the issue he was grieving by alleging that he "was disregarded when conferring to HSU [Health Services Unit] staff (Dr. Fuller and Keith Johnson) that [he] was further aggravating longstanding medical issues

---

[1] The court dismissed the plaintiff's claims against the defendants in their official capacities and his request for declaratory relief. Dkt. No. 10 at 22, 35–36. The court allowed him to proceed against the defendants "only in their individual capacities" and "only on his request for damages." Id. at 36.

by being denied a lower bunk restriction because of age restriction or policies." Id. The plaintiff alleged that he "suffered further injury" and was "not receiving test to determine problem." Id. The plaintiff elaborated that he had sent request forms to the HSU about his medical issues and concerns that he was being disregarded. Id. He spoke with Dr. Fuller, who requested his medical records to confirm the plaintiff's injuries. Id. The plaintiff alleged that he "was told to use [his] uninjured foot to descend from top bunk instead of being issued lower bunk." Id. He alleged that he "was told [he] didn't meet age requirements to receive lower bunk restriction [and his] injuries didn't warrant one." Id. The plaintiff alleged that only after he "suffered further injury due to indifference to facts" was he provided a lower bunk restriction. Id. He alleged that his injury is now worse and requires him to use a walking cane for assistance, but it "could have been avoided if officials had not been deliberately indifferent to [his] medical needs." Id.

The institutional complaint examiner's office received that complaint on November 11, 2019. Id. at 1. The same day, a complaint examiner rejected the complaint because the plaintiff had filed it past the fourteen-day calendar limit for filing a complaint. Id. at 2 (citing DOC 310.07(2)). The complaint examiner noted that the plaintiff "makes no plea for good cause" to excuse his late complaint and "does not present evidence to show how he was denied the use of or inhibited in any way from using the ICRS since the date of the occurrence." Id. The complaint examiner did not address the merits of the plaintiff's complaint. Id.

The complaint examiner recounted that, under DOC 310.10(10), the plaintiff could "appeal the rejection of this complaint within 10 days to the appropriate reviewing authority." Id. The complaint examiner added that "[t]he reviewing authority will only review the basis for the rejection of this complaint, not the merits of the complaint." Id. The defendants provided no evidence showing that the plaintiff appealed the rejection of this complaint.

b.      OCI-2022-13320

The plaintiff signed this complaint on May 18, 2022, while he was incarcerated at Oakhill Correctional Institution. Dkt. No. 24-3 at 8. The plaintiff summarized the issue he was grieving in this complaint as "DOC staff (jail and HSU) [were] causing an unnecessary and wanton infliction of pain and suffering by being deliberately indifferent to [his] right to safe conditions and adequate medical care." Id. The plaintiff alleged that this conduct began on September 3, 2019 and was "ongoing." Id. He alleged that from September 3 through November 26, 2019, Dr. Fuller viewed his medical records but denied him a bottom bunk despite his "injuries and severe pain." Id. He alleged that he made the HSU supervisor and Warden aware of the issue, but that they did not intervene. Id. The plaintiff alleged that he fell from his top bunk on October 19, 2019, which caused him further injury. Id. He alleged that Dr. Fuller and other officials "failed to act reasonably to ensure safe conditions or adequate medical treatment." Id.

The complaint continued that from November 26, 2019 through April 9, 2022, staff at Racine "acted unreasonably with indifference to ensure adequate

medical treatment and safe conditions." Id. He alleged that Dr. Kuber, Ed Neisner and several other officials (who are not defendants) denied him a bottom bunk despite having access to his medical records. Id. at 8, 10. He alleged that Dr. Kuber and others failed to ensure he was receiving physical therapy and a bottom bunk restriction. Id. at 10. The plaintiff alleged that Neisner refused to provide treatment even though "he him[-]self deemed it necessary." Id. He attached request forms that he sent to institution and HSU officials at Dodge and Racine during the alleged time frame. Id. at 11–61.

The complaint examiner's office received that complaint on May 27, 2022, but it did not acknowledge its receipt until September 2, 2022. Id. at 1. The complaint examiner rejected the plaintiff's complaint because the plaintiff had filed it "[b]eyond 14 calendar day limit." Id. at 2. The complaint examiner noted that the plaintiff had alleged "on going issues with being provided adequate treatment for serious medical needs . . . from 8/3/19 [sic] to present." Id. She recounted that the plaintiff "[was]s complaining of issues going several years back that occurred at previous institutions." Id. The complaint examiner cited "09/03/2019" as the plaintiff's "date of occurrence," and concluded that that date was beyond the fourteen-day limit for file a complaint about an issue occurring on that date. Id. She found that the plaintiff had not presented good cause for the "late filing" and did not assert that he was prevented from filing the complaint earlier. Id. She "encouraged [the plaintiff] to submit a request to HSU is [sic] he wishe[d] to be evaluated for a bottom bunk accommodation." Id. The complaint examiner gave the plaintiff

notice that he could appeal the rejection of his complaint within ten days. Id. at 3 (citing DOC 310.10(10)). She did not address the merits of the complaint. Id.

On September 11, 2022, the plaintiff signed a request for review of his rejected complaint. Id. at 62. The plaintiff asserted that his complaint "contained issues that have been ongoing since 9/3/19 they didn't occur on 9/3/19 as [the complaint examiner] stated in her comments." Id. He said that his issues "occurred from institution to institution and the grievance system doesn't restrict or prohibit one from grieving an issue just because he has left the institution and went to another one." Id. The plaintiff clarified that he was "not filing this complaint solely on the issues that occurred at previous institutions but in general on the treatment [he had] received/not received in regards to medical as a whole while in DOC care/custody." Id. He also recounted that he had filed the complaint on May 26, 2022, but that the complaint examiner's office did not acknowledge his complaint "for over three months which is well beyond the standard of time given by ICE office to acknowledge a complaint and respond to one." Id.

The complaint examiner received the plaintiff's appeal from the rejection of his complaint on September 14, 2022. Id. 4, 62. The reviewing authority reviewed the plaintiff's appeal on September 25, 2022 and concluded, "This complaint was appropriately rejected by the ICE in accordance with DOC 310.10(6)." Id. at 5.

c.      RCI-2021-18058

The plaintiff signed this complaint on November 17, 2021. Dkt. No. 24-4 at 9. His summary of the issue he was grieving was that he was "being denied a mandated medical treatment by medical staff (Ed Harris)." Id. He alleged that he attempted to resolve the issue by speaking with "Dr. Kuber, Ed Harris (physical therapist), Dr. Ribault" and others. Id. The plaintiff summarized his history of chronic back pain and a foot injury he had when he was transferred to Racine. Id. He alleged that physical therapy "was mandated," but said he missed an appointment with Harris because of COVID-19 protocols. Id. He complained about this to Dr. Kuber, and his requests for a new appointment were forwarded to Harris "even after it was pointed out he was continuing to deny [the plaintiff] because [he] missed appointments." Id. at 9, 11. The plaintiff alleged that Ribault and Dr. Kuber "said [Harris] could not" refuse the appointments. Id. at 11. The plaintiff also complained that "HSU Staff" were aware that Harris cancelled the appointments but failed to intervene. Id.[2]

A complaint examiner marked the complaint as received on November 23, 2021. Id. at 1. She summarized the plaintiff's issue as, "States he is being denied a mandated medical treatment for chronic back pain and foot injury by medical staff (Ed Harris, physical therapist)." Id. at 2. The complaint examiner recommended affirming the complaint "since Dr. Ribault sent an order for Physical Therapy Treatment, which was not started and no reason was given to

---

[2] The plaintiff's §1983 complaint does not contain allegations against a defendant named Ed Harris. The court suspects that the plaintiff may have misidentified defendant Ed Neisner as Ed Harris in this inmate grievance.

[the plaintiff] about why it was cancelled by Ed. Neisner, Physical Therapist." Id. at 3. A reviewing authority accepted that recommendation and affirmed the plaintiff's complaint. Id. at 4.

d.    RCI-2020-5053

The plaintiff signed this complaint on March 18, 2020. Dkt. No. 24-5 at 11. He summarized the issue he was grieving as "being denied bottom bunk restriction when [he had] medical reasons that deem[ed] it highly necessary." Id. He alleged that he had a lower bunk restriction when he arrived at Racine, but that "it was taken to be given to another inmate." Id. The plaintiff described his back and foot injuries justifying a bottom bunk restriction, which he said he had at Dodge in October 2019 and "since arriving [at Racine] until approximately 2 weeks ago." Id. The plaintiff alleged that he contacted the HSU "only to be told [he] ha[d] to wait for a PT to come back and have a conversation with HSU staff," and even then there were "'no promises'" that he [would] receive a lower bunk restriction. Id. The plaintiff said he "communicated with HSU the pain and discomfort [he] experience[d] when ascending [and] descending from top bunk." Id.

The complaint examiner's officer received the complaint on March 20, 2020. Id. at 1. A complaint examiner reviewed the plaintiff's efforts to resolve the issue by contacting nurses, who reviewed the plaintiff's medical chart and consulted with "the provider," who is not named. Id. at 2. The provider said the plaintiff didn't need a, so his lower bunk restriction was only from March 10 to 12, 2020. Id. The complaint examiner noted that HSU staff had reviewed the

limited restriction with the plaintiff and the complaint examiner found "no reason to believe the restrictions are not adequate or not correct." Id. She advised the plaintiff to submit a request to the HSU if he had "immediate concerns" and recommended dismissing the plaintiff's complaint. Id. at 2–3. The reviewing authority agreed with the complaint examiner's decision and dismissed the complaint. Id. at 4.

On April 16, 2020, the plaintiff signed his appeal, which the complaint examiner's office received four days later. Id. at 20. The plaintiff reiterated that he had been suffering from foot and back pain and injuries since July 2019, and said he had papers from his time at the Milwaukee County Jail and Dodge documenting his medical needs and care. Id. He alleged that he "was never given a lower bunk restriction" at Dodge,[3] and he claimed that the complaint examiner falsely stated that he had one in March 2020. Id. He recounted the treatment the HSU provided him and said that a nurse told him "the decision to be given a lower bunk restriction [was] up to [his] PT [physical therapist]." Id. The plaintiff said he had "yet to speak to him since all this." Id. He said he later spoke to the same nurse and the HSU supervisor about the low bunk restriction, and they reiterated that he had to speak with his physical therapist about it. Id. at 22. The plaintiff claimed that he did not "understand why [he was] being denied a lower bunk" and that he had "suffered long enough due to this deliberate indifference [and] cruel [and] unusual punishment." Id.

---

[3] This contradicts the statement he earlier made in the grievance that he "was given lower bunk while at D.C.I (10/26/19) and was on one since arriving" at Racine. Dkt. No. 24-5 at 11.

A corrections complaint examiner reviewed the appeal and recommended dismissing it. Id. at 6. The complaint examiner noted that the plaintiff's provider (who again is not named) "has determined that a low bunk is not necessary at this time." Id. He found that the plaintiff had "provided no new information on appeal to warrant recommending overturning th[e] decision" of the institutional complaint examiner. Id. The Office of the Secretary accepted the corrections complaint examiner's recommendation and dismissed the plaintiff's appeal. Id. at 7. She noted, "The provider has determined that a low bunk is not medically necessary." Id.

e.     RCI-2020-17732

The plaintiff signed this complaint on October 6, 2020. Dkt. No. 24-6 at 8. He summarized the issue he was grieving as "[c]ruel and unusual punishment and denial of safe and humane conditions" against numerous Racine officials, including Dr. Kuber, "by denying [him a] low bunk and not accepting [his] medical condition as [a] serious medical condition." Id. The plaintiff alleged that his low bunk restriction was "taken" on March 3, 2020, and "given[n] to another inmate." Id. He said a nurse lied about explaining to the plaintiff how to "'properly' climb on and off top bunk" and instead told him on March 12, 2020 that his restriction would not be renewed. Id. The plaintiff alleged that no HSU staff or unit officers told him that his lower bunk restriction was entered in his medical chart until June 17, 2020, and that fact was only noted after he asked to be moved from his cell because of a disagreement with his cellmate. Id. The plaintiff said he asked unit officers

12

about his restriction, but they told him they were not aware that he had one. Id. at 8, 10. He alleged that a captain told him that "anybody could give [him] a low bunk restriction at HSU." Id. at 10. The plaintiff submitted HSU requests to Dr.McLean (not a defendant), but he never responded and transferred the plaintiff's medical file to Dr. Kuber "with no direction or instructions to focus on this matter." Id. The plaintiff said he "complained to Dr. Kuber numerous times" and submitted HSU requests about his concerns, but that she never told him that he had a lower bunk restriction. Id.

The complaint examiner's office received the plaintiff's complaint on October 8, 2020. Id. at 1. The complaint examiner reviewed the plaintiff's efforts to resolve the situation and contacted a captain and nurse about the complaint. Id. at 2. She noted that the plaintiff's medical file showed he had a lower bunk restriction from June 17 to September 17, 2020, while he "was being treated in physical therapy for back and ankle pain." Id. But his bed assignments showed he was given an upper bunk from July 22 through August 9, 2020. Id. at 2–3. The complaint examiner recommended affirming the complaint because "HSU staff failed to notify the housing unit on 6/17/2020 of the Low Bunk Restriction being placed by Physical Therapy," and the plaintiff was given an upper bunk in July and August 2020. Id. at 3. She noted that the complaint examiner's office did not need to take further action "since the issue has been resolved." Id. The reviewing authority accepted the complaint examiner's recommendation and affirmed the plaintiff's complaint. Id. at 4.

### 2. State Law Claims

The defendants assert that the plaintiff served a notice of claim against Dr. Fuller on February 12, 2020. Dkt. No. 23 at ¶21; Dkt. No. 25 at ¶5; Dkt. No. 25-1. They say that the plaintiff did not file a notice of claim against any other defendant. Dkt. No. 23 at ¶22; Dkt. No. 25 at ¶6.

### 3. The Plaintiff's Additional Exhibits and Declaration

In response to the motion, the plaintiff avers that the defendants did not include "all grievances and appeals that were filed by the plaintiff while he was at DCI [Dodge]." Dkt. No. 29 at ¶4. In support he cites a page of his exhibits, which appears to be an additional, handwritten institutional complaint that the plaintiff signed on November 3, 2019. Dkt. No. 28-1 at 3. This complaint is entirely handwritten and is not on a standard institutional complaint form. Id. The plaintiff's summary of his claim and the details of his allegations contained on this page are identical to those of complaint DCI-2019-19496. Compare id. with Dkt. No. 24-2 at 6. The only difference is immaterial; the handwritten complaint says that after his fall, the plaintiff had "severe back pain that [he] ha[d] to take muscle relaxers for." Dkt. No. 28-1 at 3. In DCI-2019-19496, the plaintiff wrote that he "ha[d] to suffer from further injury to back that produces extreme pain and prevents normal mobility." Dkt. No. 24-2 at 6. The plaintiff's handwritten complaint does not have a stamp showing the institutional complaint office received it, and the plaintiff did not produce any proof that he ever submitted it to the complaint examiner's office.

14

The plaintiff further avers that he was transferred from Dodge to the Milwaukee County Jail during his fourteen-day deadline to submit complaint DCI-2019-19496 about Dr. Fuller's alleged treatment. Dkt. No. 29 at ¶6. He says that when he returned to Dodge on November 1, 2019, he asked a correctional officer for a grievance form, but the officer told him "that there wasn't any available at the time and that he had to wait til they print some off." Id. at ¶7. The plaintiff says he waited "two days at which he wrote and submitted his grievance on his issues with Fuller (11/3/19)." Id. The plaintiff does not cite anything in support of this statement, but the court infers that he means to cite the handwritten complaint discussed above, which is dated November 3, 2019. Dkt. No. 28-1 at 3. The plaintiff avers that neither the DOC nor Wisconsin Administrative Code §310 "have any clear rule(s) or instruction on what to do if you're transferred during any time during the grievance process as part of the administrative remedies." Id. at ¶8. In support of this statement, he cites a copy of Wis. Admin. Code §DOC 310 that he attached to his response materials. Dkt. No. 28-3. He avers that he "did filed [*sic*] grievances on both 10/10/19 and 11/3/19." Dkt. No. 29 at ¶9. He says the defendants "failed to produce any records of the documents." Id.

The plaintiff avers that he appealed the complaint examiner's rejection of complaint DCI-2019-19496, but that the appeal is missing from his Inmate Complaint History Report that the defendants submitted as evidence. Dkt. No. 29 at ¶11. He cites a page of his exhibits, which he says is the appeal from that rejection. See Dkt. No. 28-1 at 5. This exhibit is an "Inmate Complaint Appeal"

form in the plaintiff's handwriting. Id. It is dated November 12, 2019, which is the day after the complaint examiner rejected his complaint DCI-2019-19496. Dkt. No. 24-2 at 2. This appeal says that complaint DCI-2019-19496 "is an exact duplicate of ICE submitted on 11/3/19" and that it includes documents that the plaintiff said he would send "once afforded opportunity to copy documents." No. 28-1 at 5. The plaintiff explained that he filed the complaint late because he was "moved from different units" within Dodge and "had trouble obtaining ICE forms due to the lack of forms on Unit and empty promises to be provided them by officers." Id. He alleged that he submitted his forms "as soon as available." Id. The plaintiff added that he was "absent from institution for court on the days of 10/30 and 10/31." Id. He said he "was told to pack up property on 10/29 and arrived back to institution on 11/1." Id. He claimed that "[t]his all would delay submittance by force not choice." Id. The plaintiff also alleged that he was unaware that he could file only one complaint per week, and the Warden told him that the complaint examiner instructed him to resolve his issue with Johnson (not a defendant). Id. The plaintiff said he had not seen a complaint examiner's response instructing him to resolve the issue with Johnson, but he did make those efforts "not knowing [he] had 14 days after occurrence to submit complaint." Id. The plaintiff concludes that those reasons "constitute[] good cause to accept late complaint." Id.

This appeal form is stamped received on November 20, 2019. Id. Neither party submitted a response from a corrections complaint examiner, and the plaintiff's Inmate Complaint History Report does not show that he filed any

appeal from DCI-2019-19496. Dkt. No. 24-1 at 1. The plaintiff avers that the complaint examiners, corrections complaint examiners and reviewing authorities "undermined the Wis. Admin. Code 310.07.2 when the choose [*sic*] to reject [his] complaints after [he] submitted evidence to justify good cause for untimely filings." Dkt. No. 29 at ¶12. He says the defendants' declarations from Davidson and Samantha Via (Dkt. Nos. 24, 25) "are not true and correct" and "are false." Id. at ¶14. He cites pages from his exhibits that he says "contradict these declarations." Id. (citing Dkt. No. 28-1 at 3, 5; Dkt. No. 28-2 at 21–23). He asserts that he "filed, at the minimum, seven inmate complaints against the defendants (in total) on the claims [he] raised in the complaint filed with the courts, prior to filing the complaint with court." Id. at ¶16.

In his declaration, the plaintiff does not say anything else about the October 10, 2019 complaint, other than averring that he "did filed [*sic*]" it that day. Dkt. No. 29 at ¶9. Instead he discusses this purported complaint in his response brief, but he did not provide a copy of it. Dkt. No. 28 at 4. The plaintiff says he "ha[s] no possession of this complaint . . . and would have to utilize discovery to locate and produce it." Id. He asserts that this complaint "would also show a genuine issue of material fact if produced." Id. As evidence in support of his contention that he filed a complaint on October 10, 2019, the plaintiff points to an interview/information request about his medical treatment and denial of a lower bunk based on "age stated by Dr. Fuller." Dkt. No. 28-1 at 10. He alleged that "today [he] read medical filed that would deem [him] as a qualifent [*sic*] (10/16/19)." Id. He ends his request, "As well [he is]

yet to receive response to ICE regarding this matter." Id. On October 17, 2019, a representative from the Warden's office responded, "The ICE office has asked you to attempt to resolve your issue with K. Johnson." Id. The plaintiff notes that the defendants did not produce this evidence of his attempt to resolve his issues with Dr. Fuller. Dkt. No. 29 at ¶10.

Finally, the plaintiff avers that he filed proper notices of all state-law claims he wishes to bring in this lawsuit. Id. at ¶5; see Dkt. No. 28-2 at 20–22.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). The court must construe

all facts in the light most favorable to the plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. See Anderson, 477 U.S. at 255.

B.    Exhaustion

Under the Prison Litigation Reform Act (PLRA), an incarcerated person cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see Woodford v. Ngo, 548 U.S. 81, 93 (2006). To comply with §1997e(a), an incarcerated person must "properly take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), and expects incarcerated persons to adhere to "the specific procedures and deadlines established by the prison's policy," King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015) (citing Woodford, 548 U.S. at 93), overruled on other grounds by Henry v. Hulett, 969 F.3d 769, 774 (7th Cir. 2020). That means if the plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claims. See Perez, 182 F.3d at 535. "Substantial compliance with administrative remedies" does not satisfy the PLRA. Farina v. Anglin, 418 F. App'x 539, 543 (7th Cir. 2011) (citing Booth v. Churner, 532 U.S. 731, 739 (2001), and Dole, 438 F.3d

19

at 809). But an institutional complaint "need not lay out the facts, articulate legal theories, or demand particular relief"; the complaint is sufficient so long as it "alerts the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). Because exhaustion is an affirmative defense, the defendant bears the burden of proving that the plaintiff failed to exhaust. See Pavey v. Conley, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Wisconsin has established the ICRS to allow incarcerated persons to file complaints about policies, rules, living conditions and staff actions at their institutions. Wis. Admin. Code §DOC 310.06. Incarcerated persons must exhaust all administrative remedies that the DOC has promulgated by rule before commencing a civil action against an officer, employee or agent of the DOC. Id. §310.05. An incarcerated person must file a complaint with the complaint examiner's office within fourteen calendar days of the incident. Id. §310.07(2). A complaint examiner has discretion to accept a complaint filed beyond the fourteen-day deadline "for good cause." Id. If the incarcerated person believes he has good cause to excuse an untimely complaint, he must "request to file a late complaint in the written complaint and explicitly provide the reason for the late filing." Id. Each complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." Id. §310.07(5)–(6).

A complaint examiner must accept, return or reject the complaint. Id. §310.10(2). The complaint examiner assigns a file number to an accepted or

rejected complaint. Id. §310.10(3). The complaint examiner may reject a complaint for one of several reasons, including that the incarcerated person "submitted the complaint beyond 14 days after the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time limits." Id. §310.10(6)(e). If the incarcerated person wishes to appeal a rejected complaint, he must do so "within 10 days" by writing "to the appropriate reviewing authority who shall only review the basis for the rejection of the complaint." Id. §310.10(10). The incarcerated person must appeal any adverse decision from an accepted complaint within fourteen days of the reviewing authority's decision and await a final decision from the Office of the Secretary. Id. §§DOC 310.12 & 310.13.

C.    Analysis

The defendants assert that the plaintiff failed to exhaust his administrative remedies for his Eighth Amendment claims against Drs. Fuller and Ribault and failed in part to exhaust his Eighth Amendment claim against Dr. Kuber. Dkt. No. 22 at 1. The defendants do not assert that the plaintiff failed to exhaust his administrative remedies for his claims against defendant Neisner. The defendants also seek "clarification" about the plaintiff's state law claims. Id. They assert that the plaintiff "did not file a notice of claim that comports with Wis. Stat. §893.92(5) prior to filing this lawsuit," and argue that he should not be allowed to proceed on state-law negligence claims. Id. at 1–2.

1. *Dr. Fuller*

The defendants assert that complaints DCI-2019-19496 and OCI-2022-13320 are "potentially relevant" to the plaintiff's claims against Dr. Fuller. Dkt. No. 22 at 10. But they contend that neither of these complaints exhausted the plaintiff's remedies related to his claims against Dr. Fuller.

a.    DCI-2019-19496

The defendants assert that the complaint examiner received complaint DCI-2019-19496 on November 11, 2019, but the plaintiff alleged an incident date of October 19, 2019, which is more than fourteen days earlier. Dkt. No. 22 at 10. The complaint examiner rejected DCI-2019-19496 as untimely, and the plaintiff did not make any showing of good cause to accept the late filing. Id. The complaint examiner explained that the plaintiff could appeal the rejection within ten days, but he did not do so. Id.; Dkt. No. 24-1.

The plaintiff makes several arguments related to this complaint. First, he asserts that he *did* appeal the complaint examiner's dismissal of DCI-2019-19496. Dkt. No. 28 at 4. He attached what appears to be his appeal from the rejection of this complaint. Dkt. No. 28-1 at 5. This appeal is stamped as received on November 20, 2019, and in it the plaintiff presents several reasons why the reviewing authority should find good cause to excuse his untimely complaint, including that the grievance process was unavailable to him for a portion of his fourteen-day window to file a complaint while he was at the Milwaukee County Jail. Id.

It is undisputed that the plaintiff filed DCI-2019-19496 more than fourteen calendar days after the incident of which he complained. It is undisputed that in the complaint, the plaintiff did not state good cause to excuse his late complaint. The plaintiff has presented evidence showing that, contrary to the defendants' position, he appealed the rejection of this complaint and provided good cause to allow the late filing. But it is not enough for an incarcerated person to provide good cause in the *appeal* from the rejection of his complaint; he must "request to file a late complaint *in the written complaint* and explicitly provide the reason for the late filing." Wis. Admin. Code §DOC 310.07(2) (emphasis added). Because the plaintiff did not provide good cause to excuse his untimely complaint until the appeal of the rejection of that complaint, he did not strictly comply with Wisconsin's rules for exhausting this complaint. The court finds that DCI-2019-19496 did not exhaust the plaintiff's administrative remedies for his claim against Dr. Fuller. See Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (explaining that a complaint rejected for procedural reasons—including untimeliness—does not exhaust administrative remedies).

The plaintiff included in his evidence a handwritten complaint dated November 3, 2019 that he says he had to write by hand because grievance forms were not available to him. This complaint is effectively identical to DCI-2019-19496; the plaintiff just signed and dated it a week earlier. But there is no evidence that the plaintiff submitted this complaint to the complaint examiner's office. The complaint does not have a "received" stamp, it does not

show up in the plaintiff's complaint history report and there is no report of the complaint examiner's office seeing or ruling on this complaint.

Even if there were evidence that the plaintiff had submitted this complaint to the complaint examiner, it would not serve to exhaust his administrative remedies for his claim against Dr. Fuller for the same reasons the court just discussed. This complaint was untimely—it identifies the same incident date of October 19, 2019 but the plaintiff did not sign it (and presumably would not have filed it) until November 3, 2019 at the earliest. That is fifteen days from the incident date, one day beyond the fourteen-day deadline in §310.07(2). See Wis. Admin. Code §DOC 310.03(5) (defining "Days" as "all calendar days including Saturdays, Sundays, and state legal holidays"). The complaint's allegations are identical to those in DCI-2019-19496, including that it does not state good cause for the complaint examiner to accept the late complaint. So, even if the plaintiff had filed this complaint the day that he signed it (November 3, 2019), it still was untimely, and the plaintiff did not provide good cause to excuse the untimely filing. For the same reasons that DCI-2019-19496 did not exhaust the plaintiff's administrative remedies, this handwritten complaint could not do so.

> b.    OCI-2022-13320

The plaintiff filed complaint OCI-2022-13320 on May 18, 2022, when he no longer was incarcerated at Dodge or Racine. He generally alleged ongoing inadequate medical treatment and indifference to his health and safety from September 3 to November 26, 2019, while he was incarcerated at Dodge, and

from November 26, 2019 through April 9, 2022, while he was incarcerated at Racine. A complaint examiner rejected the complaint because it was filed more than fourteen days from the incident date, which the complaint examiner listed as September 3, 2019, even though the plaintiff wrote that the incident was ongoing. The plaintiff appealed, but the reviewing authority upheld the rejection of the complaint. Because the complaint examiner rejected OCI-2022-13320 as untimely, rather than deciding it on the merits, it does not exhaust the plaintiff's administrative remedies for his claims against Dr. Fuller or any defendant. See Conyers, 416 F.3d at 584.

The plaintiff insists that the complaint examiner wrongly rejected his complaint as untimely because the problem he alleged was ongoing. Dkt. No. 28 at 5. He cites cases from other circuits for the proposition that, "In order to exhaust their remedies, prisoners need not file multiple successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." Id. at 6 (citing cases). This line from the plaintiff's response brief is taken verbatim from Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013), though the plaintiff does not cite that case as its source, and there is more to it than the plaintiff recounts. The Seventh Circuit went on to say, "Thus, once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." Id.; see Dole, 438 F.3d at 809 ("The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins.").

There are two problems with the plaintiff's argument. First, as the court explained above, the complaint examiner rejected the November 10, 2019 complaint, and there is no evidence that the plaintiff ever filed the November 3, 2019 complaint. That means he had not given Dodge officials proper "notice of, and an opportunity to correct," Dr. Fuller's alleged treatment before filing OCI-2022-13320. The decision in Turley does not stand for the proposition that an incarcerated person can *retroactively* file a complaint about an alleged problem that he did not previously and properly grieve and that has long since ended. See Compton v. Cox, Case No. 12-CV-837, 2017 WL 933152, at *3 (W.D. Wis. Mar. 8, 2017) ("Nothing in *Turley* suggests that a relatively recently filed grievance can retroactively exhaust claims about far earlier misconduct.").

That leads to the second problem, which is that the plaintiff did not file this complaint while he was housed at the prison where the problem occurred. Wisconsin Administrative Code §DOC 310.07(10) requires that incarcerated persons "file complaints with the institution where the incident occurred." That means again, the plaintiff did not give the relevant officials "notice of, and an opportunity to correct," the problem. Turley, 729 F.3d at 650; see Pozo, 286 F.3d at 1025 ("To exhaust remedies, a prisoner must file complaints and appeals *in the place*, and at the time, the prison's administrative rules require.") (emphasis added). The plaintiff's complaint may have provided timely notice to *Oakhill* officials about his treatment and an opportunity to correct the problem at that prison. But it did not provide *Dodge* officials "notice of, and an opportunity to correct" the problem because the problem (inadequate treatment

at Dodge) had stopped two and a half years earlier. By May 2022, it was too late to do anything about it.

The plaintiff asserts that complaint examiners "routinely dismiss grievances as being improper in a biased manner despite the content of grievances." Dkt. No. 28 at 6. He recounts that a complaint examiner addressed the merits of RCI-2021-19058, even though that complaint alleged "ongoing" harm. Id. He asserts that by rejecting OCI-2022-13320 as untimely, the complaint examiner "ma[d]e administrative remedies unavailable." Id. at 6–7.

The plaintiff cites no evidence in support of his assertion that the Oakhill complaint examiner who rejected OCI-2022-13320 was biased against him. The plaintiff cannot create a genuine dispute of fact by claiming—without evidentiary support—that a complaint examiner was biased. See Davis v. Gee, Case No. 14-cv-617 2017 WL 2880869, at *5 (W.D. Wis. July 6, 2017) (citing Scott, 550 U.S. 372; and Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008)) (explaining that allegations "based on little more than speculation . . . [are] insufficient to manufacture a genuine issue of fact at summary judgment."). That a different complaint examiner at a different institution addressed the merits of a different complaint alleging "ongoing" harm merely reflects the discretion given to complaint examiners to accept complaints that do not comply with certain filing requirements. See Wis. Admin. Code §DOC 310.07(2) ("At the discretion of the ICE, a late complaint may be accepted for good cause."); id. §310.07(11) (providing that a complaint examiner "may waive any requirements under this section for good cause").

The plaintiff also misses key differences between OCI-2022-13320 and RCI-2021-19058. The Racine complaint examiner addressed the merits of RCI-2021-19058, which concerned alleged mistreatment *at that institution* over eight months. Dkt. No. 24-4 at 9 (discussing events from March to November 2021). But as the court explained, OCI-2022-13320 concerned incidents that allegedly occurred at *two other* institutions. Dkt. No. 24-3 at 8. Because the plaintiff no longer was receiving treatment from Dr. Fuller at Dodge in May 2022, the harm he allegedly suffered due to Dr. Fuller's actions was not "ongoing" and there was nothing Oakhill officials could do to address it.

The court finds that complaint OCI-2022-13320 did not properly exhaust the plaintiff's administrative remedies for his claims against Dr. Fuller (or any of his claims) in this lawsuit.

### c. Other Arguments

The plaintiff proffers two additional reasons he believes he exhausted his administrative remedies for his claims against Dr. Fuller. He first asserts that, because of his brief transfer to the Milwaukee County Jail in October and November 2019, his "administrative remedies may have been unavailable during the time [he] was required . . . to file [his] complaint to the [complaint examiner], although [he] filed grievances and appeals." Dkt. No. 28 at 4.

The plaintiff does not explain what he means when he says that his remedies "may have been unavailable" (rather than saying they *were* unavailable). He also undercuts his own argument by recounting that he still filed grievances and appeals during this time. Given that concession, there's no

reason to believe that he could not also have filed a grievance against Dr. Fuller before he left Dodge for a court hearing in Milwaukee County. The DOC Offender Detail website shows that he was housed away at the Milwaukee County Jail for only two days (October 30 and 31, 2019) during the fourteen-day window for him to grieve Dr. Fuller's alleged mistreatment on October 19, 2019. <u>See</u> Offender Detail, https://appsdoc.wi.gov/lop/details/detail (DOC #543727). The court concedes that there likely was some travel time involved, but Dodge Correctional is located only an hour and a half from the Milwaukee County Jail. The plaintiff does not explain how this brief absence rendered his administrative remedies unavailable and prevented him from timely filing a complaint. <u>See</u> <u>Hoeft v. Wisher</u>, 181 F. App'x 549, 551 (7th Cir. 2006) (rejecting incarcerated person's claim that administrative remedies were unavailable because he offered "no explanation as to why he was unable to file his administrative appeal in the seven days prior to his transfer . . . or immediately upon his return").

Even if the plaintiff is correct that his time at the Milwaukee County Jail rendered administrative remedies briefly unavailable, it is undisputed that he did not ask the complaint examiner to accept his late complaint on the basis that he was not able to file it while he was at the jail. The complaint examiner was not obligated to search for good cause to allow the late filing; it was *the plaintiff's* obligation to provide it. <u>See</u> Wis. Admin. Code §DOC 310.07(2). He said nothing in his November 3 or 10, 2019 complaints about being away at

the jail during his fourteen-day window, so he provided no reason for the complaint examiner to accept those untimely complaints.

That leaves the plaintiff's assertion that on October 10, 2019, he filed another complaint related to his allegations against Dr. Fuller. Dkt. No. 28 at 4. The plaintiff says he has no evidence of this complaint, but he avers in his declaration that he "did filed [*sic*] grievances on both 10/10/19 and 11/3/19." Dkt. No. 29 at ¶9. (The November 3, 2019, complaint is the handwritten complaint that also does not appear on the plaintiff's complaint history report.) He points to the interview/information request that appears to have been sent on October 16, 2019, in which he notes that he was "yet to receive response to ICE regarding this matter." Dkt. No. 28-1 at 10. The response from the Warden's office is dated October 17, 2019, and it recounts that a complaint examiner "asked [the plaintiff] to attempt to resolve [his] issue with K. Johnson." Id. This evidence seemingly confirms not only that the plaintiff filed a complaint sometime before October 16 and 17, 2019, but also that a complaint examiner received it and advised him to resolve the issue with K. Johnson. But the plaintiff's complaint history report does not show a complaint filed or received on or around October 10, 2019. Dkt. No. 24-1 at 1. The defendants do not address this missing complaint; it appears they believe he is referring to DCI-2019-19496. Dkt. No. 31 at 2–3 ("He is referring to a 2019 inmate complaint that was not timely filed or appealed therefore that complaint is DCI-2019-19496.").

This evidence raises several questions. What, specifically, did the plaintiff allege in the October 10, 2019 complaint? He does not say, and the complaint is not in the record. What did the plaintiff list as the incident date for that complaint? It cannot be October 19, 2019, which is the listed incident date for the plaintiff's November 3 and 10, 2019 complaints, because that is nine days earlier. Why does this complaint not appear on his complaint report history? It could be that the complaint examiner returned the complaint to the plaintiff and advised him to first attempt to resolve the complaint informally with K. Johnson. See Wis. Admin. Code §DOC 310.07(1) ("Prior to filing a formal complaint, an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint"). If that is what happened, then the plaintiff would have had ten days "to correct and resubmit [the] returned complaint" for reconsideration. Id. §310.10(5). It also would explain why there is no complaint number in the plaintiff's complaint history report associated with this complaint. See Id. §310.10(3) (providing that only accepted and rejected complaints are assigned a file number). The plaintiff does not say whether this is what happened and, if so, whether he resubmitted this complaint. If he did not, then this complaint did not exhaust his administrative remedies. See Adell v. Ray, Case No. 19-C-476, 2020 WL 5210853, at *7 (E.D. Wis. Sept. 1, 2020); Chapman v. Frank, No. 05-C-1254, 2007 WL 2220266, at *4 (E.D. Wis. Aug. 1, 2007) (citing Cannon v. Washington, 418 F.3d 714 (7th Cir. 2005)). The defendants also do not say whether this is what happened. They say nothing at all about this complaint, and there is no other evidence

31

about what happened—such as a return letter from the complaint examiner telling the plaintiff what to do next—except the response from the Warden's office that a complaint examiner told the plaintiff to resolve his issue with K. Johnson.

The court cannot answer these questions without the October 10, 2019, complaint, and the plaintiff says that he cannot provide that paperwork without discovery. The defendants did not provide this complaint or any associated paperwork, and it is their burden to show that the plaintiff did not exhaust his administrative remedies. See Pavey, 544 F.3d at 740–41. The lack of evidence of this complaint is not a sufficient basis to grant the defendants' motion for the claims against Dr. Fuller. See Roberts v. Neal, 745 F.3d 232, 234 (7th Cir. 2014) (finding summary judgment inappropriate where plaintiff provided only his "say-so that he had filed a grievance," and defendants "denied there was any record of such a grievance"). As the court explained above, the plaintiff would not need to file complaints in November 2019 to exhaust his remedies for his claim against Dr. Fuller *if* he properly filed and exhausted this complaint in October 2019 because the facts and issue are the same. See Turley, 729 F.3d at 650; Compton, 2017 WL 933152, at *3 (noting that Turley "stands for the proposition that once a grievance is filed about part of a pattern of misconduct, a prisoner may not be required to file subsequent grievances for later instances of misconduct fitting within that pattern").

The Seventh Circuit has instructed that when there are questions of fact regarding whether a plaintiff exhausted the available administrative remedies,

the court must conduct an evidentiary hearing to resolve the issue. See Pavey, 544 F.3d at 742. At the hearing, the court "may hear evidence, find facts, and determine credibility. After finding facts, the district court may allow the claim to proceed or dismiss it for failure to exhaust." Wilborn v. Ealey, 881 F.3d 998, 1004 (7th Cir. 2018) (citations omitted).

The court finds that an evidentiary hearing is necessary to determine 1) whether the plaintiff filed the October 10, 2019 complaint for his claims against Dr. Fuller and 2) whether that complaint exhausted the plaintiff's administrative remedies for his claims against Dr. Fuller.

### 2. *Dr. Ribault*

The defendants assert that complaints RCI-2021-18058 and RCI-2020-5053 might involve the plaintiff's claims against Dr. Ribault. Dkt. No. 22 at 11–12. But they contend that neither of these complaints exhausted his administrative remedies for those claims. Id.

### a. RCI-2021-18058

The defendants assert that RCI-2021-18058 did not exhaust the plaintiff's claims against Dr. Ribault because it only "mentions Dr. Ribault" but lists as the "one clearly identified issue" that physical therapist Ed Harris failed to treat him. Id. at 12. They note that under Wis. Admin. Code §DOC 310.07(5), "[e]ach complaint may contain only one clearly identified issue." Id.

The plaintiff concedes that he "may have failed to name Dr. Ribault in complaint named RCI-2020-18058, and complain that [his] issues were with him as well." Dkt. No. 28 at 7. But he then says that Dr. Ribault "is named in

the complaint, placing prison on notice of his actions." Id. In his declaration, he avers that the complaint examiner "did not reject any of the grievances that the defendants agreed mentioned claims against them as failing to 'clearly identify one issue,' as the defendants argued." Dkt. No. 29 at ¶13. He again suggests that the complaint examiner may have been biased against him when applying Wis. Admin. Code §310.09(1)(e), which he says provides "an inmate's complaint shall only contain one issue per complaint and it shall clearly identify the issue." Id. at ¶15.[4]

Contrary to the defendants' assertion, the plaintiff did not need to name Dr. Ribault personally to put the prison on notice of the problem and exhaust the claim against him. See Jones, 549 U.S. at 219 (noting that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances"). The question, as the court discussed above, is whether the complaint provided prison officials "notice of, and an opportunity to correct, a problem." Turley, 729 F.3d at 650; see Jones, 549 U.S. at 219 ("[T]he primary purpose of a grievance is to alert prison officials to a problem . . . .") (quotation omitted). The court must determine whether, despite not naming Dr. Ribault, RCI-2020-18058 sufficiently accomplished that purpose. See Jones, 549 U.S.

---

[4] The current version of Wis. Admin. Code §DOC 310 does not have a section 310.09(1)(e). It appears the plaintiff is referring to the 2014 version of DOC 310, which includes a §310.09(1)(e) that says what the plaintiff says it does. The current version of DOC 310 includes the same requirements in different words in §310.07. See §DOC 310.07(5) ("Each complaint may contain only one clearly identified issue.").

at 219 (remanding for appellate courts "to determine the sufficiency of the exhaustion").

As the court discussed above, RCI-2020-18058 asserts that physical therapist Ed Harris was denying the plaintiff "mandated medical treatment." Dkt. No. 24-4 at 9. The plaintiff said he talked to Dr. Ribault about "this issue." Id. He then summarized his history of pain and alleged that physical therapy "was mandated." Id. He said Harris denied him future appointments after he missed one, and that the plaintiff complained about Harris to Dr. Kuber. Id. The plaintiff stated that Dr. Ribault had told the plaintiff that Harris "could not" deny him physical therapy, yet Harris continued to do so. Id. at 9, 11. He reiterated that Harris continued to refuse him treatment, and that "HSU staff" did not take appropriate measures to resolve the problem. Id. at 11.

The defendants say this complaint cannot exhaust the plaintiff's claims against Dr. Ribault because the "one clearly identified issue" involves Harris, not Dr. Ribault. Dkt. No. 22 at 12 (citing Wis. Admin. Code §DOC 310.07(5)). They do not assert that the plaintiff violated §310.07(5) by attempting to shoehorn multiple issues into one complaint, and the complaint examiner did not dismiss or reject the complaint for that reason. The complaint examiner addressed the merits of the complaint and recommended affirming it because the plaintiff was given no reason why his physical therapy appointments ended. The complaint and the complaint examiner's decision focus on the denial of physical therapy from Harris. The plaintiff did not allege that Dr.

Ribault was responsible for him not receiving physical therapy, and the complaint examiner did not understand him to be asserting that.

The court finds that RCI-2020-18058 did not exhaust the plaintiff's administrative remedies for his claims against Dr. Ribault. Although the complaint mentioned Dr. Ribault, the problem it described—the problem of which the plaintiff put the prison on notice—was Harris's denial of physical therapy to the plaintiff. The complaint did not give prison officials notice of any potential issue with Dr. Ribault's treatment, which is the claim on which he is proceeding in this lawsuit.

b.    RCI-2020-5053

The defendants assert that RCI-2020-5053 also did not exhaust the plaintiff's claims against Dr. Ribault because it involves inadequate treatment that occurred in March 2020, but the claims on which the plaintiff is proceeding in this case involve mistreatment beginning in July 2021. Dkt. No. 22 at 12. They also recount that this complaint does not mention Dr. Ribault, so it did not alert the prison that Dr. Ribault was providing inadequate treatment and allow prison officials to address the problem. Id. The plaintiff says nothing about RCI-2020-5053 in his response materials.

The court agrees with the defendants that this complaint did not exhaust the plaintiff's administrative remedies for his claims against Dr. Ribault. Complaint RCI-2020-5053 generally alleges that Racine HSU staff were denying the plaintiff a bottom bunk restriction. The complaint examiner dismissed the complaint, and the plaintiff appealed all the way to the Office of the Secretary.

As the court explained above, the plaintiff did not need to "file multiple successive grievances raising the same issue . . . if the objectionable condition [was] continuing." Turley, 729 F.3d at 650. That means that because the plaintiff grieved medical staff's failure to provide him a lower bunk restriction in March 2020, he did not need to file another grievance against the same staff if they continued to refuse him a lower bunk restriction. Complaint RCI-2020-5053 also does not name Dr. Ribault; but as the court just discussed, that does not necessarily mean that it did not exhaust the plaintiff's administrative remedies. See Jones, 549 U.S. at 219.

The problem is that the plaintiff is not proceeding in this case on a claim that Racine HSU staff did not provide him a bottom bunk restriction in March 2020. He is proceeding only against Dr. Ribault on a claim that beginning in July 2021, Dr. Ribault "was aware of the plaintiff's ongoing medical issues and resulting pain but repeatedly failed to provide him adequate treatment." Dkt. No. 10 at 28. In March 2020, when the plaintiff filed complaint RCI-2020-5053, Dr. Ribault was not aware of, and could not have been indifferent to, the plaintiff's medical issues because he had not yet met the plaintiff. The plaintiff's March 2020 complaint could not have put Racine staff on notice of a problem with Dr. Ribault's treatment because that treatment had not yet occurred. The plaintiff cannot attribute to Dr. Ribault the decisions of medical staff made sixteen months earlier based on different facts. He instead was required to file a separate grievance about Dr. Ribault's medical decisions—decisions with which he disagreed based on the facts that Dr. Ribault

encountered when he saw the plaintiff in July 2021. See Venson v. Gregson, Case No. 18-CV-2185, 2021 WL 2948817, at *9 (S.D. Ill. July 14, 2021) (finding Turley's "continuing violation doctrine" inapplicable where the alleged mistreatment "is of a different flavor and is factually distinct" from that alleged in earlier complaints); Burt v. Berner, Case No. 13-CV-794, 2015 WL 1740044, at *5 (S.D. Ill. Apr. 14, 2015) (finding "remoteness in time" can render earlier grievance insufficient to exhaust administrative remedies for future, similar mistreatment).

The court finds that the defendants have satisfied their burden to show that the plaintiff failed to exhaust his administrative remedies for his claims against Dr. Ribault. The court will dismiss Dr. Ribault and the claims against him without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice"). Because the court is dismissing the plaintiff's federal claims against Dr. Ribault, it will relinquish supplemental jurisdiction over the state-law claims against him. See 28 U.S.C. §1367(c)(3).

### 3. *Dr. Kuber*

The defendants assert that complaints RCI-2020-17732 and RCI-2021-18058 relate to the plaintiff's claims against Dr. Kuber. Dkt. No. 22 at 13. But they assert that these complaints exhaust only one of the plaintiff's claims against Dr. Kuber. Id.

a.   RCI-2021-18058

The defendants assert that complaint RCI-2021-18058 did not exhaust the plaintiff's administrative remedies against Dr. Kuber for the same reasons it did not exhaust his remedies for his claims against Dr. Ribault—because the "one clearly identified issue" in the complaint involves Harris, not Dr. Kuber. Dkt. No. 22 at 12, 14 (citing Wis. Admin. Code §DOC 310.07(5)).

The court agrees that complaint RCI-2021-18058 did not exhaust the plaintiff's administrative remedies against Dr. Kuber for the same reasons the court determined it did not exhaust his administrative remedies for his claims against Dr. Ribault. As the court explained above, the complaint examiner did not dismiss or reject the complaint for violating §310.07(5), and that is not the reason why complaint RCI-2021-18058 does not exhaust the plaintiff's administrative remedies for his claims against Dr. Kuber. The problem, again, is that the issue raised in this complaint is physical therapist Harris's failure to treat the plaintiff, not Dr. Kuber's alleged inadequate care. The complaint mentions Dr. Kuber but does not put prison officials on notice of any problem involving her or her treatment of the plaintiff's medical issues. It therefore did not exhaust the plaintiff's administrative remedies for his claims related to Dr. Kuber.

b.   RCI-2020-17732

The defendants concede that RCI-2020-1772 exhausts the plaintiff's claim that Dr. Kuber denied him a low bunk. Dkt. No. 22 at 13. But they assert

that it "does not exhaust the other claims against Dr. Kuber as they are nowhere raised in RCI-2020-17732." Id.

This complaint alleged that Racine HSU officials, including Dr. Kuber, were denying the plaintiff a lower bunk and rejecting his medical condition as serious. Dkt. No. 24-6 at 8. The plaintiff alleged that he "complained to Dr. Kuber numerous times" about his concerns, but that she never told him that he had a lower bunk restriction. Id. This complaint does not say anything about Dr. Kuber taking his cane and telling him that he was "too young" for one, failing to treat his pain or ignoring his complaints that physical therapy was not helping and not providing alternate treatment. Id.; see Dkt. No. 10 at 27.

The plaintiff asserts that he exhausted his administrative remedies for all claims against Dr. Kuber because he noted his various concerns about her treatment in the HSU requests he filed at Racine. Dkt. No. 28 at 8. The plaintiff is incorrect. Incarcerated persons submit health service requests to alert medical staff at the institution of a medical need. Those forms do "not constitute a formal grievance for exhaustion purposes." Dionne v. Majewski, Case No. 15-C-190, 2016 WL 1050283, at *2 (E.D. Wis. Mar. 16, 2016); see Whiteside v. Pollard, Case No. 10-C-725, 2012 WL 1580430, at *1 (E.D. Wis. May 4, 2012) ("[R]equests made through health services do not constitute proper exhaustion under Wisconsin's administrative rules."). That means the plaintiff did not properly raise or exhaust any issues he addressed only in his HSU requests but did not also raise in his complaints.

The court finds that complaint RCI-2020-17732 sufficiently exhausted *only* the plaintiff's claim that Dr. Kuber failed to provide him a lower bunk restriction despite his repeated requests. It did not exhaust any of the plaintiff's other claims against Dr. Kuber, including those involving her denial of a cane for the plaintiff, her "pass[ing] off the plaintiff to Neisner" or not providing alternative treatments for his pain. The plaintiff could have raised those concerns in complaint RCI-2020-17732; otherwise, he was required to file grievances related to each medical concern that he wanted the prison to address. See Turley, 729 F.3d at 650 (requiring incarcerated persons to file "[s]eparate complaints about particular incidents . . . if the underlying facts or the complaints are different); Moore v. Bennette, 517 F.3d 717, 728–29 (4th Cir. 2008) (cited in Turley) (finding no exhaustion where incarcerated person complained about inadequate medical care for Hepatitis C but not for gout). The only medical issue the plaintiff described in complaint RCI-2020-17732 was his need for a bottom bunk, so that is the only issue he properly exhausted.

The court will limit the plaintiff's claims against Dr. Kuber. He may proceed against her only on his claim that she denied him a lower bunk restriction. The court will dismiss without prejudice the plaintiff's other claims against Dr. Kuber. See Ford, 362 F.3d at 401.

4. *State Law Claims*

The defendants seek clarification on the state-law claims that the court allowed the plaintiff to pursue. Dkt. No. 22 at 14–15. They assert that the

plaintiff cannot proceed on negligence claims because he did not properly file a notice of that claim to the Wisconsin Attorney General. Id. at 14–15 (citing Wis. Stat. §893.82(2m)). They explain that the plaintiff did serve a notice of claim but did not do so by personal service or certified mail, as Wisconsin law requires. Id. at 15 (citing Wis. Stat. §893.92(5)).[5] They also assert that the plaintiff's notice of claim did not reference Drs. Ribault and Kuber or physical therapist Neisner. Id. The defendants recount that medical malpractice claims do not need to be served on the Attorney General, so the plaintiff is not prohibited from proceeding on those claims. Id.

In response, the plaintiff attached two notices of claim that he says he sent to the Attorney General by certified mail. Dkt. No. 28 at 10; Dkt. No. 28-2 at 20–22. The first notice is dated November 8, 2019. Dkt. No. 28-2 at 20. The second is dated August 2, 2022. Id. at 21. He also attached a disbursement request dated August 4, 2022, that he says shows he paid for his second notice of claim to be sent via certified mail. Id. at 23. He says that he sent the first notice of claim on February 10, 2020, via certified mail, but that he did not submit a disbursement request showing that. Dkt. No. 28 at 10. He says that these documents show he properly sent both notices of claim via certified mail, regardless of what might have happened with "the postage once if was dropped in the box." Id.

---

[5] Section 893.92(5) does not exist. The court infers that the defendants meant to cite §893.82(5), which states that a notice of claim must "be served upon the attorney general at his or her office in the capitol or at the department of justice by personal service or by certified mail."

The first notice of claim, dated November 8, 2019, is related to Dr. Fuller's allegedly inadequate treatment from September 13 to October 19, 2019. Dkt. No. 28-2 at 20. It discusses the plaintiff's foot and low back issues and how Dr. Fuller allegedly did not provide the plaintiff a lower bunk restriction, instead telling him "to use [his] 'good foot'" and that he was too young for a low bunk restriction. Id. The plaintiff alleges that he experienced a back injury on October 19, 2019 that requires him to take medication and walk with a cane. Id. There is no documentation in the record showing that the plaintiff sent this notice of claim via certified mail. The plaintiff asserts (without evidence) that he sent the notice of claim about Dr. Fuller on February 10, 2020. The defendants, however, attached a copy of this notice of claim and the envelope in which the plaintiff sent it. Dkt. No. 25-1. The envelope shows a "Forever" stamp and confirms the mailing date of February 10, 2020. Id. at 2.

The second notice of claim, dated August 2, 2022, names Drs. Fuller and Kuber and defendant Neisner (although it spells his name "Nasir"). Id. at 21. It generally describes the plaintiff's medical needs and alleged mistreatment from September 3, 2019 through April 8, 2022, from medical officials at Dodge and Racine (much the same as complaint OCI-2022-13320). Id. The final sentence alleges that Dr. Ribault "acted with malpractice" by refusing to refer the plaintiff to a physical therapist. Id. at 22.

The court explained in the screening order that it would "exercise supplemental jurisdiction over [the plaintiff's] related state law claims of negligence *and* medical malpractice" against the defendants because they were

43

"'so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" 28 U.S.C. §1367(a). Dkt. No. 10 at 26–28, 34 (emphasis added). The court inferred that the plaintiff sought to proceed against the defendants on state-law claims of both negligence and medical malpractice based on the allegations in his complaint. Id.

The defendants have provided evidence showing that the plaintiff did not properly send his first notice of claim via certified mail or personal service. He instead mailed it with standard postage, which is not sufficient under Wisconsin law. That means the claim in this notice against Dr. Fuller was not properly presented to the Attorney General, and the plaintiff cannot proceed on the claim against Dr. Fuller based on this notice of claim.

But the plaintiff's evidence shows that he properly sent his second notice of claim via certified mail. This notice included his claims against Drs. Fuller and Kuber and defendant Neisner. It also included his claim that Dr. Ribault failed to refer him for physical therapy but not the claim on which he is proceeding in this lawsuit involving the plaintiff's requests for a lower bunk. The defendants do not discuss this notice of claim in their summary judgment materials. The court finds that this second notice of claim properly raised the plaintiff's state-law claims that he seeks to pursue in this litigation against Drs. Fuller and Kuber and defendant Neisner. It did not properly raise the plaintiff's claim against Dr. Ribault, but the court is dismissing Dr. Ribault from this lawsuit for the reasons discussed above. This decision does not foreclose the

44

defendants from raising additional defenses to the plaintiff's state-law claims in a motion for summary judgment on the merits, such as that it was untimely served or improperly included multiple claims.

5.  *Summary*

The court will schedule an evidentiary hearing to determine whether the plaintiff exhausted his administrative remedies for his claims against Dr. Fuller. The court will defer a ruling on the defendants' motion for summary judgment as it relates to Dr. Fuller until after the evidentiary hearing.

The court will grant the defendants' motion as it relates to Dr. Ribault. The court will dismiss Dr. Ribault and the plaintiff's claims against him without prejudice because the plaintiff failed to properly exhaust his administrative remedies for those claims before bringing this lawsuit.

The court will grant the defendants' motion as it relates to Dr. Kuber. The only Eighth Amendment claim on which the plaintiff may proceed against Dr. Kuber is her failure or refusal to provide him a lower bunk restriction. He may not proceed on claims that Dr. Kuber took his cane, failed to treat his pain, ignored his complaints about physical therapy or failed to provide alternate treatment. The court will dismiss those claims without prejudice.

The plaintiff may proceed on his state-law claims of both negligence and medical malpractice against the remaining defendants, subject to the court's decision on the defendants' motion for summary judgment as it relates to Dr. Fuller. If the court later determines that the plaintiff did not exhaust his administrative remedies for his federal claims against Dr. Fuller, it may

45

relinquish supplemental jurisdiction over his state-law claims against Dr. Fuller. See 28 U.S.C. §1367(c)(3).

### III. Conclusion

The court **GRANTS IN PART** and **RESERVES RULING IN PART** on the defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 21.

The court **ORDERS** that the parties must appear for an evidentiary hearing on **December 3, 2024 at 10:00 AM** in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 to determine whether the plaintiff exhausted his administrative remedies for his claims against Dr. Fuller, as explained above. The court will issue a writ for the plaintiff's appearance at the hearing. The court **RESERVES RULING** on the defendants' motion for summary judgment as it relates to Dr. Fuller until after the evidentiary hearing.

The court **GRANTS** the defendants' motion as it relates to defendant Ribault and **DISMISSES** Dr. Ribault and the claims against him without prejudice.

The court **GRANTS** the defendants' motion as it relates to defendant Kuber. The plaintiff may proceed against Dr. Kuber only on his claim that she denied him a lower bunk restriction. The court **DISMISSES** all other federal claims against Dr. Kuber.

The court **CLARIFIES** that the plaintiff may proceed on state-law claims of negligence and medical malpractice against the remaining defendants, subject to its decision related to Dr. Fuller after the evidentiary hearing.

Dated in Milwaukee, Wisconsin this 24th day of September, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**